## MAGNOLIA PETROLEUM CO. v. WINKLER.
### No. 875.

Court of Civil Appeals of Texas. Eastland.
June 12, 1931.

Walace Hawkins, of Dallas, and Thos. R. Smith, and L. W. Sandusky, both of Colorado, for appellant.

J. M. Harris, of Snyder, and Brooks & Woodward, of Big Spring, for appellee.

FUNDERBURK, J.

On January 24, 1930, Magnolia Petroleum Company was engaged, among other things, in operating in its business, heavy trucks and motor vehicles over the Bankhead Highway in Mitchell and Howard counties. On that date a large truck alleged by plaintiff to be "such as is ordinarily used by oil companies in the transportation of heavy machinery, equipment and supplies," and being at the time heavily loaded with machinery of some sort, was in sole charge of, and operated by,

G. L. Nelson for said company, in discharge of the latter's duties as employee. As the truck left Big Spring to go to Iatan, about twenty miles distant, the driver, in response to a solicitation from one Oscar Winkler to be given a ride, consented and permitted him to get upon the truck. On approaching Iatan, according to the contention of Winkler, and the findings of the jury in accordance therewith, Nelson, the driver, while the truck was in motion, commanded Winkler to jump off, which he did, and was injured. In this suit said Winkler recovered judgment for damages resulting therefrom, and the defendant has appealed.

■ Appellant's first proposition asserts that plaintiff's petition was subject to general demurrer, in that the alleged acts of negligence, if committed, were done and performed by the driver of the truck while and during the time he was acting beyond the scope and out of the course of his employment, and not in the performance of any duty to the defendant. The question thus sought to be presented is not one, we think, that properly arises upon a consideration of the sufficiency of plaintiff's pleading, as tested by a general demurrer. It was alleged that the injuries and damages complained of were caused "by the wilful and wanton negligence of the defendant through its agent, the said Nelson, *while he was in the course of employment for the defendant,*" etc. (Italics ours.) As against a general exception, the pleading is thought to be not subject to the criticism urged. Although the allegations were general, we think the proper construction is that Nelson, the driver, in commanding plaintiff to jump off the truck, did so in the course of his employment.

■ By its third proposition, appellant contends that the evidence not only failed to show that the truck driver's alleged willful acts, proximately causing plaintiff's injuries, were committed as a servant of, or in the performance of any duty, actual or implied, for the defendant, but on the contrary established that his acts were the independent acts of the truck driver acting in his own behalf, or in privity with the plaintiff. This point has been given our most careful consideration. The undisputed evidence shows that Nelson had no authority to permit the plaintiff to ride on the truck. There was nothing in the design or the use of the truck to raise a reasonable inference that it was being operated for the transportation of passengers. Clearly then, the driver, in permitting plaintiff to get upon the truck, and in transporting him from Big Spring to Iatan, was not acting within the scope of his employment. No question, however, arises regarding the liability of the defendant for permitting the plaintiff to ride upon the truck. Plaintiff was not injured as a result of being permitted to enter

the truck, or to ride upon same. He was injured because he jumped off the truck while it was in motion. His sole contention, as limited by the verdict of the jury and made the basis of the judgment, was that Nelson, the truck driver, commanded him to jump off, and, because of that command, he jumped.

■ To ascertain the existence or not of defendant's liability, it is well to look for a duty, if any, which it was owing the plaintiff, and which it failed to discharge. Unless there was a duty, there could be no liability.

■ No duty arose because of the immaturity and want of discretion in the plaintiff, because he was eighteen years, nine months and twenty-one days old; had done various kinds of work, including that of being manager of a grocery store; and he had experience in riding upon and alighting from trucks. Therefore, the principles of liability which were controlling in such cases as Cook v. Navigation Co., 76 Tex. 353, 13 S. W. 475, 18 Am. St. Rep. 52; Missouri, K. & T. Ry. Co. v. Rodgers, 89 Tex. 675, 36 S. W. 243; Smith Bros. v. Williams (Tex. Civ. App.) 294 S. W. 309, and Texas Co. v. Blackstock (Tex. Civ. App.) 21 S.W.(2d) 13, have no application. The principle of liability in those and like cases seems to be one analogous in some respects to that of discovered peril. Blossom Oil, etc., Co. v. Poteet, 104 Tex. 230, 136 S. W. 432, 35 L. R. A. (N. S.) 449.

■ Neither did any duty arise based upon the principles of discovered peril as applied to adults. The evidence does not suggest that, independently of the act of plaintiff in jumping off the truck, he was in a perilous position. Even if he was, such fact had nothing to do with his injury. If the principle of discovered peril could be extended so as to include the command to jump off, and the act of the plaintiff in jumping, plaintiff's own evidence negatives the existence of any imminent peril. He testified that Nelson had slowed down the truck from twenty-five or thirty miles an hour to twelve or fifteen miles. He further testified that one could have alighted from the truck going ten miles an hour. If, therefore, there was danger in jumping off the truck while moving at the rate of twelve to fifteen miles an hour, it was not, we think, that obvious and imminent danger upon which liability under the doctrine of discovered peril is predicated. Cockrell v. Texas & N. O. Ry. Co., 36 Tex. Civ. App. 559, 82 S. W. 529. As already said, to make it such, there would have to be added the fact of plaintiff's immaturity and lack of discretion, which have no existence in this case.

■ Whether defendant could be guilty of negligence and therefore liable (unless excused by other facts), based upon the theory that Nelson, by giving the command in question, breached some duty which defendant

owed to plaintiff, may be determined, we think, by the answer to a single question. That is: Was the driver, in commanding plaintiff to jump off the truck, by that very act, as distinguished from his operation of the truck, performing a duty of his employment, or, on the contrary, was he acting for himself or the plaintiff? It may at once be taken for granted that, if he was acting for the defendant in giving such command, it was not in pursuance of any express authority. If the authority to give the command for the defendant existed at all, it was an implied authority. We assume, without deciding, that Nelson, the truck driver, occupied a position in the service of defendant analogous to the conductor of a freight train in the service of a railroad company, and that, as such, he had implied authority to eject trespassers from the truck. Denison, etc., Ry. Co. v. Carter, 98 Tex. 196, 82 S. W. 782, 107 Am. St. Rep. 626; Galveston H. & S. A. Ry. Co. v. Zantzinger, 93 Tex. 64, 53 S. W. 379, 47 L. R. A. 282, 77 Am. St. Rep. 829. Did Nelson command plaintiff to jump off in order to free the truck of his presence as one not entitled to be thereon? Or was it for the purpose of completing the transaction by which he had, without authority of his employer, used the truck to accommodate the plaintiff in giving him a ride from Big Spring to Iatan, the destination of the truck? Or was such command given for the purpose of preventing the employer from knowing that the employee had permitted plaintiff to ride? It is wholly unimportant in the present inquiry that Nelson, in driving the truck and controlling the operations thereof, was doing so in the discharge of his employer's business. This we take to be an undisputed fact in the case. It is necessary to defendant's liability that, in commanding plaintiff to jump off, that act must have been done in furtherance of the master's business, and for the accomplishment of the object for which the servant was employed. International & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; International & G. N. Ry. Co. v. Yarbrough (Tex. Civ. App.) 39 S. W. 1096. The command to "jump off" was of the same nature as respects the question of defendant's liability as the act of the engineer and fireman in discharging the hot water upon Cooper in International & G. N. Ry. Co. v. Cooper, 88 Tex. 607, 32 S. W. 517, 518. In that case "the fireman and engineer were, at the time the injury was inflicted, in the employ of Campbell, receiver, *and were engaged in the performance of a service to him;* that is, *they were operating a locomotive,* each performing his duty as engineer or fireman." (Italics ours.) So was Nelson in this case, as respects the operation of the truck. But, just as in that case, the injury "did not occur from anything done in the performance of such duty," so it may or may

not be true in this case, the question being dependent upon a proper interpretation of the facts. It is just as essential in this case that the act of Nelson, in commanding plaintiff to jump off the truck, "must have been done in the course of the employment of the servant and for the purpose of forwarding the business of the master," as it was necessary in the case cited that "the act itself of discharging the hot water must have been" so done. When the facts are undisputed, and but one reasonable inference can be drawn from same, the question should be determined as one of law, as was done in International & G. N. Ry. Co. v. Cooper, supra. If not, then "the question of authority or not is one of fact to be determined by the jury like any other issue, and not a matter of law to be decided by the court." Galveston H. & S. A. Ry. Co. v. Zantzinger, 93 Tex. 64, 53 S. W. 379, 381, 47 L. R. A. 282, 77 Am. St. Rep. 829.

In this connection it is to be observed that no such issue was submitted to the jury in this case. Unless the fact was established by uncontroverted evidence as a matter of law that Nelson, in commanding the plaintiff to jump off, did so in discharge of the duties of his employment, then all other issues in the case were immaterial. Were it necessary for us to determine whether, for this reason, the verdict may not be insufficient to support the judgment, a very difficult question in the present state of the authorities would be presented.

█ But, passing this over, let us examine the evidence to see if an issue was presented which should have been submitted to the jury. It is not arguable, we think, that as a matter of law the employee, in giving the command to jump off the truck, was acting for his employer. Plaintiff testified that the big Mack truck with a Magnolia sign on it, equipped with an oil wench like all oil trucks, loaded with machinery, was in control of the truck driver at the wheel; that, when near Iatan, Nelson told him nobody was "allowed to ride on the truck; to get on around him so his boss would not see anybody riding on the truck; that he would lose his job." That when he "got on the running board he (Nelson) told me to jump off, and I jumped off because he told me to." As to how plaintiff came to be on the truck, he testified: "I hollered at him and kinda motioned to him to slow down. I was standing there hollering at him and asked him if he was going down the road. He said he was going about twenty miles to a Magnolia camp and would *help me out;* (italics ours) I did appreciate that." After plaintiff had ridden from Big Spring to Iatan, the truck driver said "I would have to get off because he was not allowed to haul anybody and that he would get caught. I did not want him to lose his job and I *was perfectly willing to get off.* * * * He did

834

help me, yes, and I *was perfectly willing to help him.* * * * It did not make any difference to me where I got off. No, I *would have gotten off at one point as quick as another.* Yes, he said, 'Jump off, this is as far as I am going.' (Italics ours.) That is what he said, the very words."

Plaintiff's own testimony, we think, conclusively shows that Nelson, in commanding him to jump off, did so in pursuance of his agreement to transport the plaintiff "down the road about twenty miles," and, if not solely in pursuance of such purpose, then to prevent his employer from learning that, contrary to instructions, he had permitted plaintiff to ride upon the truck. Nelson had, for plaintiff's benefit, committed an offense against the defendant in permitting the plaintiff to ride. He had thereby violated the instructions of his employer. This was known to the plaintiff at least when he was commanded to jump off. The command was given as the culminating act in carrying out the joint purpose of Nelson and plaintiff to make use of defendant's truck in conveying plaintiff to Iatan, or if not that purpose alone, then in addition thereto, for the purpose of preventing the defendant from learning of Nelson's violation of the rule against carrying passengers. That the latter would not be an act in the discharge of the master's business is well illustrated in Grahn v. International & G. N. Ry. Co., 100 Tex. 27, 93 S. W. 104, 105, 5 L. R. A. (N. S.) 1025, 123 Am. St. Rep. 767, wherein, of an alleged wrongful ejection of one from a train whereon he had procured an employee, without authority, to let him ride, the court said: "His motive in driving plaintiff off the train while in motion might have been, not to serve his master, [italics ours] but to cover up his offense against his master." The last case is authority for the proposition that "if there is any doubt as to that, the doubt must be resolved against the wrongdoer." This would naturally result from the fact that plaintiff has the burden of pleading and proving that an alleged negligent act is within the scope of the employee's authority.

We are forced to the conclusion, however, that either or both of the purposes of the said Nelson in commanding plaintiff to jump off the truck, as shown by plaintiff's own evidence, was entirely outside of his employment with the defendant. As to that question, the evidence raised no issue for the jury. The trial court should, therefore, have granted appellant's request for a peremptory instruction in its favor.

█ We are also unable to see if Nelson, the truck driver, should have foreseen an injury to plaintiff as the natural and probable consequence of his jumping off the truck, why the plaintiff should not also have foreseen the same consequence. There is no evidence that the plaintiff, in jumping off, was acting under any character of coercion or fright produced from the command. So far as we can see, he was in just as good, if not a better, position than the driver to judge whether it was safe to jump. He didn't even request that the truck be further slowed down. If, in view of the speed of the truck at the time, it was negligence on the part of Nelson to command the plaintiff to jump off, we think it equally certain that it was negligence for the plaintiff to jump off.

█ It is the contention of appellee that contributory negligence was no defense, since the jury found that the command of Nelson to plaintiff to jump off the truck was willful negligence. Treating "wilful negligence" as synonymous with gross negligence, which the definition, given by the court and not complained of, shows to be the sense in which the words were used, there was an entire absence of any testimony to sustain such a finding. Sufficient facts have already been recited, borne out by plaintiff's own testimony, to negative any inference of willful or wanton conduct, or of gross negligence.

For the reasons discussed, it is our opinion that the judgment of the trial court should be reversed, and, since it appears that the case was fully developed and an instructed verdict should have been given, it is our opinion that judgment should be here rendered for the defendant, which is accordingly so ordered.